STATE OF CONNECTICUT *v.* MIGUEL A. MIRANDA

LOISELLE, BOGDANSKI, LONGO, SPEZIALE and PETERS, Js.

Argued June 7—decision released September 12, 1978

*Bourke G. Spellacy,* special public defender, with whom, on the brief, was *John C. King,* for the appellant (defendant).

*Richard A. Schatz,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

LONGO, J.   A jury found the defendant, Miguel A. Miranda, guilty of the crime of manslaughter in the first degree in violation of § 53a-55 (a) (1) of the General Statutes.  The defendant admitted that he shot the victim, Daniel Germany, and testified that he acted in self-defense when Germany attacked him with a knife.  His only claim on appeal is that the trial court erred in excluding from evidence Germany's record of convictions of crimes of violence. We agree.

Germany had a lengthy criminal record.   The defendant's offer of proof was limited to two convictions of breach of peace by assault in 1965, a conviction of carrying a dangerous weapon in 1969, and a conviction of assault in the second degree in 1973. Those convictions, of which the defendant was unaware at the time of the shooting in 1975, were offered as evidence of Germany's violent character, as tending to show that Germany was the aggressor in the fatal incident.   Thus the evidentiary issue resolves itself into two distinct questions:   (1) In

a homicide trial where the accused claims self-defense, may the accused introduce evidence of the victim's violent character to establish that the victim was the aggressor, regardless of the accused's lack of prior knowledge of such character or the evidence? (2) If such evidence is generally admissible, is the victim's record of convictions of crimes of violence acceptable proof of character?

## I

In a trial for homicide the character of the deceased ordinarily is irrelevant to the accused's guilt or innocence. It is well settled, however, that an accused may introduce evidence of the violent, dangerous or turbulent character of the victim to show that the accused had reason to fear serious harm, after laying a proper foundation by adducing evidence that he acted in self-defense and that he was aware of the victim's violent character. *State v. Padula,* 106 Conn. 454, 456, 138 A. 456; 1 Wharton, Criminal Evidence (13th Ed.) § 236; annot., 1 A.L.R.3d 571, 596 § 7. The reason for the rule was explained in *State* v. *Padula,* supra: "If the reputation of the deceased be that of a violent, dangerous, or turbulent character, such reputation, if known to the defendant, may be a circumstance contributing to a reasonable belief by the accused that his life is in peril and his consequent state of mind as to the necessity of defending himself and the means justifiably to be taken in so doing."

Logically, evidence of a homicide victim's violent character might be offered by the accused for yet another purpose, to show that the victim was the aggressor in their encounter, irrespective of the accused's knowledge of the victim's character. This view was considered and rejected in *State* v. *Padula,*

supra, 459. See also *State* v. *Johnson,* 139 Conn. 89, 93, 90 A.2d 905. We have not had occasion to reconsider the matter since.

The case for admissibility of character evidence on the vital issue of who was the aggressor has been cogently stated by Professor Wigmore. When evidence of the deceased's violent character is offered to show the defendant's state of mind, "it is obvious that the deceased's character, as affecting the defendant's apprehensions, must have become known to him; i.e. proof of the character must indispensably be accompanied by proof of its *communication to the defendant;* else it is irrelevant." 1 Wigmore, Evidence (3d Ed.) § 63, p. 470. But when evidence of the deceased's character is offered to show that he was the aggressor, "this additional element of communication is unnecessary; for the question is what the deceased probably did, not what the defendant probably thought the deceased was going to do. The inquiry is one of objective occurrence, not of subjective belief." 1 Wigmore, loc. cit.

We are no longer persuaded that these forceful arguments are outweighed by the objections raised in *State* v. *Padula,* supra, 459, that admitting such evidence would unfairly prejudice the prosecution's case and would tempt the jury "to measure the guilt of the accused by the deserts of the victim." When an accused chooses to place the deceased's violent character in issue, the state may enjoy the same right of rebuttal as when the accused places his own nonviolent character in issue. See *State* v. *Martin,* 170 Conn. 161, 167, 365 A.2d 104; 1 Wharton, Criminal Evidence (13th Ed.) § 236, pp. 514–17. There is always the risk that the jury may be unduly diverted and confused by collateral matters such as

character; the sound discretion of the court is relied upon to focus the jury's attention on the material issues in the trial.

In cases which have observed the distinction between using evidence of the deceased's violent character to show the accused's state of mind and using it to show that the deceased was the aggressor, it has generally been held that when competent evidence of character is offered for the latter purpose it is admissible regardless of the extent of the accused's knowledge of such character or of the particular evidence in question. We adopt the majority rule. See *United States* v. *Burks,* 470 F.2d 432, 434–35 (D.C. Cir.); *State* v. *Griffin,* 99 Ariz. 43, 47, 406 P.2d 397; *People* v. *Cellura,* 288 Mich. 54, 64, 284 N.W. 643; *State* v. *Keaton,* 258 Minn. 359, 367, 104 N.W.2d 650; *Commonwealth* v. *Amos,* 445 Pa. 297, 302–303, 284 A.2d 748; *State* v. *Infanto-lino,* 116 R.I. 303, 313–14, 355 A.2d 722; 1 Wharton, op. cit. § 236, p. 513; annot., 1 A.L.R.3d 571, 601 § 8.

## II

The next stage of our inquiry is whether it is permissible to prove a homicide victim's violent character and hence the allegation that he was the aggressor by evidence of his prior convictions of crimes of violence. In theory, a trait of character may be proved in three ways: (1) by testimony concerning the individual's reputation in the community as to the trait; (2) by testimony of those who have had an opportunity to form, and have formed, an opinion as to whether the individual possessed the trait; (3) by evidence of specific acts of the individual under similar circumstances, from which the existence of the character trait may be inferred. The first method is universally acceptable in situa-

tions where character evidence is permitted. *State v. Blake,* 157 Conn. 99, 104, 249 A.2d 232; McCormick, Evidence (2d Ed.) § 186. Although the second method is not allowed in a number of states, Connecticut adopted it in *Richmond* v. *Norwich,* 96 Conn. 582, 594, 115 A. 11, on the rationale that "[p]ersonal observation and personal knowledge are a more trustworthy reliance than general reputation." Both methods are appropriate to prove the character for violence of a homicide victim. See *State v. Padula,* 106 Conn. 454, 456–57, 138 A. 456; *State v. Jacoby,* 260 N.W.2d 828, 837 (Iowa).

The third method of proving character, evidence of specific acts, has consistently been disapproved in Connecticut and other jurisdictions except in cases where character is directly in issue. *State* v. *Townsend,* 167 Conn. 539, 561, 356 A.2d 125; 1 Wigmore, Evidence (3d Ed.) §§ 191–213. Such evidence of specific instances of conduct is excluded not because it is unconvincing, but because it has the potential to surprise, to arouse prejudice, to multiply the issues and confuse the jury, and to prolong the trial. *Richmond* v. *Norwich,* supra, 597; *Verdi* v. *Donahue,* 91 Conn. 448, 454, 99 A. 1041.

These considerations have led many courts to limit proof of a homicide victim's character for violence to reputation testimony and opinion testimony, excluding evidence of prior convictions and other specific acts of violence unknown to the defendant.[1] *Sanders* v. *State,* 245 Ark. 321, 324, 432 S.W.2d 467; *People* v. *Flores,* 189 Colo. 209, 211, 539 P.2d 1236;

---

[1] There is a marked trend towards admitting evidence of prior convictions and other instances of violent conduct *known* to the defendant as probative of the defendant's state of mind. See *People* v. *Miller,* 39 N.Y.2d 543, 349 N.E.2d 841; *Maggitt* v. *Wyrick,* 533 F.2d 383, 386n (8th Cir.).

*State* v. *Jacoby,* supra, 838; *Henderson* v. *State,* 234 Ga. 827, 829–30, 218 S.E.2d 612; *McDonald* v. *State,* 218 So. 2d 21, 22–23 (Miss.); *State* v. *Infantolino,* supra. On the other hand, in similar circumstances a growing number of jurisdictions have recognized an exception to the rule that prior convictions and other specific acts of violence may not be used to prove character. *United States* v. *Burks,* 470 F.2d 432, 434, 438 (D.C. Cir.); *United States* v. *Akers,* 374 A.2d 874, 877 (D.C. App.); *People* v. *Rowland,* 262 Cal. App. 2d 790, 797, 69 Cal. Rptr. 269; *State* v. *Taylor,* Minn. , 258 N.W.2d 615, 620; *State* v. *Alderette,* 86 N.M. 600, 605, 526 P.2d 194; *Commonwealth* v. *Amos,* 445 Pa. 297, 302, 284 A.2d 748; *Dempsey* v. *State,* 159 Tex. Crim. 602, 605, 266 S.W.2d 875; *Stover* v. *Commonwealth,* 211 Va. 789, 794, 180 S.E.2d 504.

We are presented in this appeal only with the question of the admissibility of convictions of crimes of violence. We agree with the reasoning of the latter group of decisions that the nature of such evidence and the victim's absence from the trial warrant a narrow exception to the rule that conduct may not be used to prove character. That a homicide victim has a record of violent crime should not come as a surprise to the prosecution. Nor is introduction of the victim's criminal record likely to confuse the jury and waste time, since the fact of the convictions is beyond dispute and inquiry must necessarily be limited to the time the events occurred and the nature of the conduct for which the victim was convicted. *Commonwealth* v. *Amos,* supra, 302–303; see also *State* v. *Mason,* 208 Kan. 39, 41, 490 P.2d 418; *State* v. *Conyers,* 58 N.J. 123, 133, 275 A.2d 721; *People* v. *Cruz,* 65 P.R.R. 160, 168. Most important, such evidence can be highly relevant in helping the

jury to determine whether the victim had a violent disposition and whether the defendant's story of self-defense is truthful. See *Evans* v. *United States,* 277 F.2d 354, 356 (D.C. Cir.).

We hold that in a homicide prosecution where the accused has claimed self-defense, the accused may show that the deceased was the aggressor by proving the deceased's alleged character for violence. The deceased's character may be proved by reputation testimony, by opinion testimony, or by evidence of the deceased's convictions of crimes of violence, irrespective of whether the accused knew of the deceased's violent character or of the particular evidence adduced at the time of the death-dealing encounter. We emphasize that the accused is not permitted to introduce the deceased's entire criminal record into evidence in an effort to disparage his general character; only specific convictions for violent acts are admissible. *People* v. *Miller,* 39 N.Y.2d 543, 553, 349 N.E.2d 841. Nor is the accused authorized to introduce any and all convictions of crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression. In each case the probative value of the evidence of certain convictions rests in the sound discretion of the trial court. *Commonwealth* v. *Amos,* supra.

In this case, the fatal shooting took place in 1975 and the defendant's offer of proof consisted of two convictions of breach of peace by assault in 1965, a conviction of carrying a dangerous weapon in 1969, and a conviction of assault in the second degree in 1973. Those convictions can perhaps be questioned as being too remote in time or lacking elements of violence, depending on the underlying

facts and circumstances. The record indicates, however, that the trial court excluded the convictions not for lack of probative value, but for lack of a showing that the defendant knew of them, which was a correct application of the law stated in *State* v. *Padula,* 106 Conn. 454, 459, 138 A. 456. Having concluded that the law should be changed, we cannot say under the circumstances that the court's ruling could not reasonably have affected the jury's rejection of the self-defense claim and was therefore harmless. *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion BOGDANSKI, SPEZIALE and PETERS, Js., concurred.

LOISELLE, J. (dissenting). I agree with the majority opinion extending the rule of admissibility of evidence of aggression on the part of the victim on the issue of self-defense, but I do not agree that evidence of specific acts is admissible for that purpose. The rationale for the rule which we have always followed, making specific acts inadmissible to prove a character trait, was well stated in *Richmond* v. *Norwich,* 96 Conn. 582, 597, 115 A. 11, and I see nothing in this case to warrant overruling this time-honored practice. See also *State* v. *Townsend,* 167 Conn. 539, 561, 356 A.2d 125.