[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner, Samuel Veal, alleges in this habeas petition that Attorney Kevin C. Connors, counsel on his direct appeal and for his prior habeas petition, was ineffective in representing the petitioner in both matters. The lengthy procedural background of this case will be set forth for the sake of clarity.
I CT Page 2669
Procedural History
The petitioner was found guilty on June 11, 1984, after a jury trial (Barry, J.), in the Judicial District of Hartford-New Britain at Hartford of the crimes of murder in violation of General Statutes § 53a-54a and assault in the second degree in violation of General Statutes § 53a-60a
(a). At trial the petitioner was represented by Attorney Carl Eisenman, assistant public defender. The petitioner was sentenced to a total effective Sentence of sixty years consecutive to a sentence that he was already serving. The petitioner, represented by Connors, appealed his conviction. The conviction was affirmed by the Connecticut Supreme Court. State v. Veal,201 Conn. 368, 517 A.2d 615 (1986).
On February 16, 1985 the petitioner filed a habeas petition alleging that trial counsel failed to adequately represent the petitioner at his jury trial. The habeas court dismissed the petition after finding that the petitioner had failed to show "either deficient performance or sufficient prejudice." Veal v. Warden, Superior Court, judicial district of Tolland, Docket No. CV 85 00090, (August 7, 1990, Axelrod, J.). At that hearing, the petitioner was represented by Connors, who had been appointed as a special public defender. The petitioner appealed the habeas court decision. On appeal the petitioner was represented by Attorney Denise Ansell, special public defender. The appeal was denied. Veal v. Warden, 28 Conn. App. 425,611 A.2d 911, cert. denied, 224 Conn. 902, 615 A.2d 1046 (1992). The petitioner is now before this court on his second petition for habeas relief.
The petitioner was permitted, with leave of the court, to file a third amended petition dated September 15, 1997 to which the respondent filed a return dated September 23, 1997. This matter was heard by the court on September 10, 1997 and September 25, 1997. The petitioner's brief was filed on November 28, 1997 and the respondent's on December 1, 1997.
 II
Claims Raised in Each Habeas Petition
In the first habeas matter, the petitioner claimed that trial counsel failed to adequately represent him at trial. The claims in the first habeas petition can be summarized for the purposes of the instant petition into four categories. First, trial counsel failed to present an affirmative defense of extreme emotional disturbance. Second, trial counsel presented as the sole defense one of apologia. Third, trial counsel failed to make appropriate hearsay objections. Fourth, trial counsel failed to request a proper jury charge and to take exception to the one given. No claim was made CT Page 2670 in the first habeas petition that appellate counsel was ineffective.
In the petitioner's present habeas petition, he alleges the following in three counts.
Count one alleges that habeas counsel failed to raise the issue that trial counsel did not offer any mitigating evidence on behalf of the petitioner at sentencing from their expert witness on the petitioner's background and mental condition at the time of the crime and did not call forward family members of the petitioner who would have given relevant testimony with respect to the relationship between the petitioner and the victim.
Count two alleges that appellate counsel rendered ineffective assistance by failing to raise on appeal various issues regarding a conflict of interest and breakdown in communication between trial counsel and the petitioner. Specifically, the petitioner claims appellate counsel should have claimed that the trial court erred in not granting a motion for new counsel,[1] in failing to canvass the petitioner on the breakdown of the attorney-client relationship and then appointing new counsel at sentencing and in failing to canvass the petitioner properly regarding his mental and physical condition at sentencing after learning the petitioner attempted to commit suicide early that morning.
Count three alleges the same facts contained in Count Two but claims that such failures by the trial court violated the petitioner's due process rights under the fourteenth amendment of the United States constitution and article first, §§ 8, 9 and 10 of the Connecticut constitution.
 III
Findings of Fact
The following are the facts as set forth in the Supreme Court opinion on appeal that formed the basis of the petitioner's conviction. "During the evening of July 30, 1983, a number of people were sociably playing cards at a private home in Hartford. When additional visitors arrived around 11 p.m., the card game broke up and four of the visitors, the defendant, another man and two women, then left the house. As they were walking away from the house, the defendant, without visible provocation, fired a shot at one of the women, who had formerly been his girlfriend. After the victim fell to the ground, the defendant fired additional shots at her at close range. The victim died at St. Francis Hospital without having regained consciousness. In firing at the victim, the defendant also hit the other woman, who suffered a bullet wound in her arm. The defendant fled from the scene of the CT Page 2671 crime but was apprehended later that evening by the Hartford police." Statev. Veal, supra, 201 Conn. 370.
The court finds the following additional facts. Throughout the criminal proceeding the petitioner never denied and, in fact, accepted responsibility for the victim's death. Trial counsel negotiated a plea agreement in which the petitioner would receive a sentence of thirty-five years. Despite the recommendation of counsel, the petitioner rejected this offer. Trial counsel had the petitioner examined by two psychiatrists with a view towards developing a defense of extreme emotional disturbance. Neither doctor was able to conclude that there was such a disturbance and therefore neither was called by trial counsel either during the trial or at sentencing. At the criminal trial family members and others who were scheduled to testify for the defense were not permitted to testify because of a ruling by the court adverse to the petitioner. In light of the court's ruling, the petitioner chose not to testify. After the close of evidence, the petitioner made a motion for new counsel, which was denied.
The petitioner, after his conviction, was interviewed by the office of adult probation which produced a presentence investigation report. The report, which was presented to the trial court, was correct in all respects with the exception of a misstated date.[2] Prior to sentencing trial counsel attempted to review with the petitioner the presentence investigation and other matters. The petitioner walked out of the conference. At the beginning of the sentencing hearing, trial counsel put a statement on the record advising the petitioner of his rights to sentence review and appeal. At that point, the trial court was advised that the petitioner claimed to be ill, having taken a handful of pills in the early morning in an effort to end his life. The court asked the petitioner a series of questions about the petitioner's condition.[3] The petitioner was aware of the nature and scope of the proceedings. The trial court imposed the sentence. The petitioner then asked for an attorney for his appeal. Apparently, due to some confusion in whether the sentences were to run concurrently or consecutively, the petitioner was brought back before the trial judge later the same day. At that time the petitioner again requested appointment of a special public defender for appeal purposes. The petitioner did not at that time express any concerns about the earlier proceedings with respect to his ability to understand or comprehend those proceedings.
At this second habeas hearing the petitioner testified as did his two brothers, David and Robert Veal, Connors and the Honorable Kevin McMahon, then assistant state's attorney. Trial counsel was not called as a witness. David Veal indicated that the petitioner was kind, helpful, loved children, and loved the victim. He further testified that the petitioner was "noble". CT Page 2672 He indicated that he knew the victim and the petitioner fought a lot but did not know the substance of those arguments. Robert Veal testified that he never saw his brother get into a fight, that he was not a violent person, and that his brother is articulate and smart. These characterizations appear to be motivated by familial duty rather than an accurate representation of the petitioner's character prior to sentencing.
 IV
DISCUSSION
 A
Ineffective Assistance of Habeas Counsel
The petitioner claims in count one that habeas counsel was ineffective for not raising the issue that trial counsel did not adequately present evidence in support of mitigation of the petitioner's conviction at the time of sentencing. The petitioner claims evidence of the petitioner's mental state and testimony by his family members with respect to the relationship between the petitioner and the victim would have been helpful for purposes of mitigation.
The petitioner's right to the effective assistance of counsel, is assured by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution.Copas v. Commissioner of Correction, 234 Conn. 139, 153, 662 A.2d 718
(1995). The petitioner's right to effective assistance of habeas counsel is predicated on General Statutes § 51-296, which provides for the appointment of counsel for an indigent person in any habeas corpus proceeding arising from a criminal matter. Lozada v. Warden, 223 Conn. 834,838, 613 A.2d 818 (1992). To succeed in this second bid for a writ of habeas corpus, the petitioner must prove (1) that his trial counsel was ineffective and (2) that his habeas counsel was ineffective. Id., 842. "The second habeas petition is inextricably interwoven with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement." Id., 843.
To establish that his trial counsel was ineffective, the petitioner must prove both that his counsel's performance was deficient and that the petitioner was actually prejudiced by such deficient performance. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);Copas v. Commissioner of Correction, supra, 234 Conn. 154; Lozada v. Warden, supra, 223 Conn. 842-43; Bunkley v. Commissioner of Correction,222 Conn. 444, 445, 610 A.2d 598 (1992). To prove that his counsel's CT Page 2673 performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 357,559 A.2d 206 (1989). Competent representation is not representation with no error. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal, quotation marks omitted.) Jeffrey v. Commissioner of Correction,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.) Johnson v.Commissioner of Correction, 36 Conn. App. 695, 703, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).
With respect to the prejudice component of the Strickland test, the petitioner must demonstrate that, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."Strickland v. Washington, supra, 466 U.S. 687. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a successful petitioner is required; to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner of Correction, supra, 234 Conn. 147. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra, 694.
Connors testified at this second habeas hearing that he is not a proponent of the "kitchen sink" approach to habeas claims. He evaluated the petitioner's claims, reviewed the transcripts from the trial, spoke with the petitioner and trial counsel and made decisions with respect to claims that he believed presented a significant issue. With regard to the petitioner's claim that Connors should have alleged in the first habeas petition that the petitioner's emotional or mental state at the time of the crime should have been used at his sentencing, the petitioner has failed to present any credible evidence that would lead this court to believe that such condition existed at or about the time of the crime. The only evidence that was developed on this issue came from the mouth of the petitioner[4] when he relayed his historical relationship with the victim and the facts concerning the crime, the transcript of the petitioner's sentencing, and the presentence investigation report. The petitioner claimed that he had a stormy relationship with the victim including an incident occurring in 1974 CT Page 2674 in which the victim threw lye in his face and he was stabbed seven times by a female friend of the victim. This testimony, which trial counsel sought to introduce at trial but was precluded from doing so, was not sufficiently proximate in time to the crime to be admissible. Similarly if offered at sentencing it would have had little, if any, weight for the same reason. In fact the presentence investigation report set forth for the trial court the stormy relationship between the victim and the petitioner and, as can be seen from this excerpt of the transcript, had little impact on the sentencing court.
 "THE COURT: The Court has reviewed the detailed and comprehensive presentence investigation prepared by the probation department. There is little in it or in the remarks of counsel or the defendant that mitigate the level of violence used by the defendant in perpetrating this crime. Other than the defendant's fairly steady employment record, the Court can find very little to encourage leniency in its sentence.
 The defendant is claimed to be an abused spouse, claimed a tumultuous relationship with the deceased over a period of time, has claimed abuse by Paulette Dunston over the years. To whatever degree that abuse inflicted by Miss Dunston on Mr. Veal is true, the Court is not impressed with it as any kind of source of mitigation of the conduct that he engaged in on the day of the shooting.
 There is no evidence of provocation in this case, there is no defense of self-defense, there is no evidence of mental problems or emotional problems at the time of the shooting entered into the evidence presented in this case, but the facts — what the facts boiled down to as related in the trial is that this murder was obviously planned, and apparently coolly executed in the presence of other victims, and in a manner that left no doubt as to the intent to kill on the part of the defendant.
(Petitioner's Exhibit 2, pp. 22-23.)
No credible evidence was offered at this second habeas hearing that would allow this court to find that the alleged omission of trial counsel would have had any effect on the sentencing court. CT Page 2675
The petitioner also claims that testimony from his brothers at sentencing would have been helpful in the sentencing phase and that the failure by his first habeas counsel to raise this deficiency by trial counsel requires that relief be granted to him. This testimony, if offered at sentencing, would have been overwhelmingly contradicted by the petitioner's history of violence on which history the trial court commented. Based upon the evidence presented at trial as well as the petitioner's prior record it is difficult to imagine that any of the testimony from the petitioner's brothers would have any impact on the court's sentence.
This court finds that the petitioner has failed to sustain his burden of proof that trial counsel was ineffective for not providing evidence at sentencing of the petitioner's mental condition at the time of the crime or providing the testimony of his brothers and that habeas counsel's failure to raise this alleged deficiency by trial counsel was ineffective assistance.
 B
Ineffective Assistance of Appellate Counsel
1
In count two the petitioner claims the trial court failed to ensure the petitioner of a fair trial and appellate counsel was ineffective for not raising this issue on appeal. The petitioner argues that when trial counsel put a lengthy statement on the record at sentencing regarding his representation of the petitioner, the trial court should have realized there was a breakdown in the attorney-client relationship and should have properly, canvassed the petitioner about the relationship and appointed new counsel. (Petitioner's Exhibit 2, pp. 3-8.) The petitioner argues that even though he did not ask the court at sentencing for new counsel, his trial counsel's statement indicated such a breakdown in communication that it was incumbent upon the trial court to inquire into the conflict of interest.
"The constitutional right of a criminal defendant to the effective assistance of counsel also includes the right to such assistance on the defendant's first appeal as of right." Bunkley v. Commissioner ofCorrection, supra, 222 Conn. 45. "[A] criminal defendant is entitled to be represented by an attorney free from conflicts of interest." State v. Webb,238 Conn. 389, 417, 680 A.2d 147 (1996). There is a fundamental principle "that an attorney owes an overarching duty of undivided loyalty to his client. At the core of the sixth amendment guarantee of effective assistance of counsel is loyalty, perhaps the most basic of counsel's duties."Phillips v. Warden, 220 Conn. 112, 136, 595 A.2d 1356 (1991), quotingStrickland v. Washington, supra, 466 U.S. 692. "In a case of a claimed CT Page 2676 conflict of interest, therefore, in order to establish a violation of thesixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance."Blakeney v. Commissioner of Correction, 47 Conn. App. 568, 583, ___ A.2d ___ (1998), quoting Phillips v. Warden, supra, 132-33. To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest impairment or compromise of his interests for the benefit of another party." (Internal quotation marks omitted.) Blakeney v. Commissioner of Correction, supra, 585. In that case, the appellate court found that simply having a client who was uncooperative and distrustful did not constitute a conflict of interest. Id., 584.
"The trial court has broad discretionary power to determine whether an attorney should be disqualified for an alleged . . . conflict of interest." State v. Webb, supra, 238 Conn. 417. For a trial court to order "a last minute discharge of counsel there must exist exceptional circumstances." (Internal quotation marks omitted.) State v. Drakeford,202 Conn. 75, 84, 519 A.2d 1194 (1987). It is clear that the right to effective assistance of counsel does not include an "unlimited opportunity to obtain alternate counsel." State v. Watson, 198 Conn. 598,610, 504 A.2d 497 (1986). "It is the province of the trial court to determine whether there is a factual basis for disqualification of counsel." (Citation omitted.) Id. "A defendant is not entitled to demand a reassignment of counsel simply on the basis of a breakdown in communication which he himself induced." (Internal quotation marks omitted.) State v. Gethers, 193 Conn. 526, 545, 480 A.2d 435
(1984). Without a substantial complaint from the petitioner, the trial court need not inquire into any underlying dissatisfaction with the petitioner's attorney. State v. Robinson, 227 Conn. 711, 725,631 A.2d 288 (1993).
What is evident from the transcript of the sentencing proceeding is that the petitioner walked out of a conference with his counsel immediately prior to sentencing. Trial counsel and the petitioner clearly were frustrated with each other. Trial counsel, in an effort to ensure that his client was aware of all of his rights with respect to appeal and sentence review, advised his client of these rights by stating them on the record. Before making the statement, trial counsel gave the trial court a limited explanation for his actions. The petitioner did not ask the trial court for new trial counsel, although he did ask for appellate counsel.
This court finds that trial counsel's duty of undivided loyalty to his client was not compromised and there were no comments or other actions by CT Page 2677 trial counsel during any of the proceedings, including the statement made at sentencing, that can be construed to be an abandonment of that duty of loyalty by trial counsel to his client. This court finds that trial counsel's statement and the reasons offered for it did not require that the trial court inquire into the attorney-client relationship nor appoint new counsel. Therefore, it cannot be said that appellate counsel's failure to raise these issues on appeal constitutes the ineffective assistance of appellate counsel.
2
The petitioner also argues that appellate counsel was ineffective for failing to raise the issue of the trial court's failure to properly canvass the petitioner regarding his mental and physical condition at the time of sentencing after learning the petitioner had tried to commit suicide. This court finds that the trial court properly canvassed the petitioner about his claimed use of controlled substances that morning and the petitioner's ability to understand the nature and scope of the proceedings. See Petitioner's Exhibit 2, pp. 9-12. This court finds that the trial court went forward when it was convinced the petitioner was fully able to participate in the proceedings intelligently. Therefore, it cannot be said that appellate counsel's failure to raise the issue on appeal constitutes ineffective assistance of appellate counsel.
 V
CONCLUSION
Taking all of the claims individually or collectively, the court does not find that the petitioner was denied effective assistance of either habeas counsel or appellate counsel.[5]
The petition is dismissed.
Zarella, J.